Filed 6/16/15  In re D.U. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re D.U., a Person Coming Under the Juvenile Court Law. | C076931 |
| YOLO COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, Plaintiff and Respondent, v. D.U., Defendant and Appellant. | (Super. Ct. No. JV140016) |

Derrick U. (father) appeals from the juvenile court's dispositional orders as to minor D.U. (Welf. & Inst. Code, § 395.)[1]  Father contends the court's order on visitation impermissibly delegated absolute discretion to the minor to decide whether visitation will

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

occur.  Concluding this contention is forfeited because father did not object to the order when it was made, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of our disposition, we need not recite the facts in detail.

On January 16, 2014, Yolo County Department of Employment and Social Services (the department) filed a petition as to the 12-year-old minor under section 300, subdivisions (a), (b), (g), and (i), alleging that father physically and psychologically abused the minor, and mother's whereabouts were unknown.[2]

At the initial hearing on January 17, 2014, the juvenile court ordered the minor detained.  Father was to receive two visits by the next court date if the minor was willing.

At a hearing on January 28, 2014, after speaking to the minor outside father's presence, the juvenile court found it would be detrimental to the minor to force him to have visitation with father at that time.

After his removal from father's custody, the minor was referred to Yolo Family Service Agency (YFSA) for individual counseling.  He attended sessions on March 20 and March 26, 2014, but refused to complete the second session.  During an April 14, 2014, telephone conversation with the social worker, the minor's counselor stated that the minor had had suicidal ideation; she provided crisis intervention information to the caregiver and referred the minor for a higher level of mental health care.  The next day, the caregiver informed the counselor that the minor refused to attend further sessions with her.

At a contested jurisdiction hearing on April 18, 2014, the minor testified that he did not want to be around father at all, even if others were in the room.  The minor did not want to return to father because the minor did not think father would ever change.

_____

[2] Mother, who lived out of state, was subsequently located and the juvenile court ordered reunification services for her at disposition.  She is not a party to this appeal.

2

The juvenile court ruled that it would not order visitation yet, finding it would be detrimental to the father/son relationship to do so. The court ordered therapy for the minor and directed that a new therapist was to be found as soon as possible.

On April 20, 2014, the minor said he wanted to kill himself. He was placed on a section 5150 hold and hospitalized until April 24, 2014. On release, he was again referred for outpatient mental health services.

The minor was in twice-weekly Therapeutic Behavior Services (TBS) through Turning Point and weekly individual therapy through YFSA, but, as of May 9, 2014, had attended only two therapy sessions, and left the second session early. The TBS provider said working with the minor was a slow process; it was difficult to build trust because the minor had experienced significant trauma. His behavior was typical of traumatized children: he was "triggered" by loud or sudden noises. He would not meet with the TBS provider alone, but insisted that his caregivers be with him. They gave him beneficial structure and his placement was working out well. However, he was not prepared to engage in "trauma focused" therapy; he had very limited coping skills.

Visitation with the minor's father had been limited to telephone contact, and the minor did not even want that.

The jurisdiction/disposition report, filed May 22, 2014, recommended out-of-home placement for the minor and reunification services for both parents.

The case plan proposed the following order on visitation: "[Father] will maintain contact with [the minor] via written correspondence mailed to the Department . . . . All correspondence will be provided to [the minor]'s therapist who will evaluate the letters and share them with [the minor] in a therapeutic setting. Upon the therapist's recommendation and [the minor]'s indication that he is willing, visitation will commence in a therapeutic setting, and may progress to supervised visitation outside of therapy if recommended by [the minor]'s therapist."

3

At a jurisdiction/disposition hearing on May 29, 2014, the juvenile court stated that "to try to force the visitation at this point between the father and [the minor] . . . would be counterproductive given . . . his somewhat fragile mental health and emotional health." The court asked the parents to be "patient and thoughtful about that, that that is the situation we're in and the Court is hopeful that at some point [the minor] will, through his counseling, through his therapy, be open to visiting with his dad." The court also ruled that if the minor requested contact or was ready for it before the court expressly gave permission, contact could "[a]bsolutely" happen.

At the jurisdiction/disposition hearing on July 1, 2014, all parties submitted on the reports. The juvenile court sustained the amended section 300 petition. The parties agreed that the court could proceed to disposition. The court received all reports to date into evidence for purposes of disposition. Father did not raise any objection to the case plan's recommendation on visitation. The court thereafter adopted the department's recommendations in writing and ordered: "Visitation is as outlined in the Case Plan."

**DISCUSSION**

Father contends: "Delegating to the child the right to determine if visitation occurs is an abuse of discretion because it amounts to a denial of visitation without proof of detriment before the court." The department replies: "Substantial evidence supports the juvenile court's finding of detriment in forcing [the] minor to visit with [father]."

In their original briefs, neither party noted that father did not object to the visitation order when it was made. We requested supplemental briefing as to why his failure to object to the order did not forfeit the issue. Having read and considered the parties' supplemental briefs, we conclude the issue is forfeited.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this

4

rule. [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).) Although a reviewing court may exercise discretion to consider such a belated challenge, it should do so rarely and only if the challenge raises an important legal issue. (*Id.* at p. 1294.)

Father contends we should not find the issue forfeited because he objected to the visitation order. But father's citations to the record all predate the jurisdiction/disposition hearing. As we have shown, at that hearing father submitted without argument as to both jurisdiction and disposition on the existing reports, which included the department's recommended case plan. Thus, father's claim that he objected to the visitation order from which he now appeals is not supported by the record.

In the alternative, father contends we should excuse his failure to object and exercise our discretion to reach the merits because visitation is "an important legal issue that impacts permanency and stability for his child." (*See S.B., supra*, 32 Cal.4th at pp. 1293-1294.) We are not persuaded.

In *S.B.*, on which father relies, our Supreme Court held that whether a minor's *legal guardians* could preclude a parent's visitation was an important legal issue in need of resolution because it had "divided the Courts of Appeal." (*S.B., supra*, 32 Cal.App.4th at pp. 1293-1294.) This case does not present any such unresolved legal issue. Rather, as the department notes, it presents the factual question whether the juvenile court was correct to find that requiring visitation at this time would be detrimental to the minor.

Moreover, father's argument proves too much. Almost all dependency orders may "impact[] permanency and stability" for the minor. If that were enough to avoid the forfeiture rule, that rule would effectively cease to exist in dependency proceedings, contrary to the clear teaching of *S.B.*

Because father did not object to the juvenile court's visitation order when it was made, his appellate challenge to the order is forfeited.

## DISPOSITION

The visitation order is affirmed.

           RENNER           , J.

We concur:

  BLEASE         , Acting P. J.

  HULL          , J.